**PRYOR, Guardianship, In re.**

Probate Court, Franklin County.

No. 146494.    Decided June 3, 1952.

John A. Brink, Cincinnati, for Veterans Administration.
J. C. Erwin, Columbus, for Guardian.

## OPINION

By McCLELLAND, PJ.

This matter comes before the Court on an application filed on April 16, 1952, by the terms of which Ruth L. Popovich, the guardian of the person and estate of Ralph Pryor, asks for authority to pay $1000.00 in payment of a bill of $2093.55 for the support of said Ralph Pryor in The Columbus State Hospital. The guardian further represents that the claim was presented to Mary B. Pryor, Administratrix of the estate of William B. Pryor, deceased, the father of the ward, on October 22, 1951. The claim was presented to the Administratrix on the theory that the father of the ward was liable for his support in The Columbus State Hospital. At the hearing of this matter it was disclosed that just recently the sum of $1064.00 was forwarded to the guardian by the Veterans Administration, which money has been placed by the guardian in a checking account. The guardian was appointed on January

17, 1952, and it therefore appears that the claim for support of this ward accrued prior to the appointment of the guardian. It is the contention of the Veterans Administration that this money in its present form is exempt from the claim for the support of the ward prior to the appointment of a guardian. The Veterans Administration relies upon the wording of Section 454a, Chapter 10, Title 38, United States Code, which is a part of the World War Veterans' Relief Act, which section is in part as follows:

"Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. Such provisions shall not attach to claims of the United States arising under such laws nor shall the exemption herein contained as to taxation extend to any property purchased in part or wholly out of such payments." (Here follows other provisions not pertinent to the issue.)

The last decision construing this statute by the Supreme Court of the United States is that of Carrier v. Bryant, reported in United States Supreme Court Report, Vol. 306, page 545, the syllabus of which is as follows:

"Negotiable notes and United States bonds purchased, and held as investments, for an incompetent World War veteran by his guardian out of 'payments of benefits' made to him by the United States under laws relating to such veterans, held not exempt under Section 3 of the Act of August 12, 1935 from execution upon a judgment against the incompetent."

At page 547 of the above Report we find the following language:

"The first sentence grants exemption from taxation, claims of creditors, attachment, levy or seizure under any legal process whatever. The things exempted are 'payments of benefits' due or to become due either before or after receipt by the beneficiary.

"Investments purchased with money received in settlement of benefits are not such payments due or to become due. Accordingly, giving the words employed their ordinary meaning, the notes and bonds in question are not exempted by the first sentence in Section 3. It left them, like other property, subject to taxation, claims of creditors, and legal process.

"The second sentence in the section clearly recognizes the distinction between benefit payments and property purchased with money therefrom. It declares the exemption provisions

in the first sentence shall not attach to claims of the United States; also that exemption from taxation shall not extend to property purchased out of benefit payments. Nothing is said concerning claims of creditors. Nevertheless, petitioners seem to maintain, immunity from these must be inferred. But a mere declaration that investments always subject to taxation shall not enjoy exemption therefrom affords no basis for holding them free from claims of creditors. Although the first sentence extended no immunity to investments, apparently out of abundant caution, the second declared them subject to taxation."

We also find a construction of this statute by the Supreme Court of Ohio in the case of **Bowen, Gdn. v. Amend,** reported in **141 Oh St** at **page 602,** the second syllabus of which is as follows:

"Under Title 38, Chapter 10, Section 454a, U. S. Code, a part of the World War Veterans' Relief Act, benefits in the form of a pension and war risk insurance paid to a veteran or to his guardian by the federal government and deposited in a checking account in a bank, are exempt from the claim of creditors. But such benefits, when placed in a savings account at interest or converted into real estate, lose their exempt status and become investments amenable to creditors' demands."

At page 608 of this Report, Judge Zimmerman uses the following language:

"An 'investment' as that word is commonly used and understood is the placing of capital or laying out of money in a way intended to secure income or profit from its employment. And under §10506-41 GC, the deposit of funds by a fiduciary in a savings account in a national bank located in the state of Ohio or a state bank located in and organized under the laws of the state of Ohio is classed as an investment."

In the instant case this money recently received from the Veterans Administration is now in the form of a checking account in the name of the guardian. Technically it is still money and is not an investment.

This Court is advised by counsel for the guardian that the guardian has been intending to invest this money as soon as it could be ascertained whether or not it might be used to settle the claim of the State of Ohio for the maintenance of the ward prior to the appointment of a guardian. The guardian could, if she so desired, immediately make an application to invest this money, procure an order to do so, and then invest it and thereby render it subject to the payment of creditors. By doing so, it would lose its character as money and take on the character of an investment.

In this case it is the opinion of the Court that it may invoke one of the cardinal principles of equity, and that is, the Court should consider that done which was intended to be done or which should have been done. The Court therefore, under the circumstances and considering the intention and the legal obligation of the guardian to invest these funds, may consider them as already invested and therefore apply the law as applying to investments.

It is therefore our opinion that the guardian should be, and is hereby, authorized to use $1000.00 of the funds now in her hands to settle the claim of the State of Ohio for the maintenance of her ward prior to the appointment of the guardian.

As we have hereinbefore stated, the Department of Public Welfare of the State of Ohio, through its Department of Support, has presented a claim to the Administratrix of the estate of the deceased father. It is our opinion that the estate of the ward is primarily responsible for the ward's support and that the father is only secondarily liable. As far as the State of Ohio is concerned it may look to it, but as between the ward and the parents of the ward, the ward's estate is primarily liable for his support.

An order may be drawn accordingly.